IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF CALIFORNIA, by and through ATTORNEY GENERAL XAVIER BECERRA and the CALIFORNIA AIR RESOURCES BOARD, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, and STATE OF VERMONT,<br><br>                                                Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW R. WHEELER, in his official capacity as Administrator, United States Environmental Protection Agency,<br><br>                                                Respondents. | No. 19-1227 |

**PETITION FOR REVIEW**

Pursuant to 42 U.S.C. § 7607(b)(1) (Clean Air Act § 307(b)(1)), Rule 15 of the Federal Rules of Appellate Procedure, and D.C. Circuit Rule 15, the States of California, by and through Attorney General Xavier Becerra and the California Air Resources Board, Illinois, Maryland, New Jersey, New Mexico, Oregon, Rhode Island, and Vermont, and the Commonwealth of Pennsylvania (collectively,

1

Petitioners) hereby protectively petition this Court for review of the Final Rule of Respondents United States Environmental Protection Agency (EPA) and Administrator Andrew R. Wheeler set forth in the attached Federal Register notice published at 84 Fed. Reg. 44,547 (Aug. 26, 2019) ("Adopting Requirements in Emission Guidelines for Municipal Solid Waste Landfills").

This petition is filed protectively because Petitioners believe that the order and judgment in *California, et al. v. EPA, et al.*, No. 18-cv-03237-HSG (N.D.Cal. May 6, 2019), mitigates much of the potential harm Petitioners would otherwise suffer as a result of the Final Rule. EPA, however, has moved to amend the order and judgment in *California, et al. v. EPA, et al.*, in a way that would expose Petitioners to the full set of harms from this Final Rule. The hearing on that motion was held on October 24, 2019.

Dated: October 25, 2019                                Respectfully Submitted,

| | |
|---|---|
| FOR THE STATE OF CALIFORNIA | FOR THE STATE OF ILLINOIS |
| | |
| XAVIER BECERRA | KWAME RAOUL |
| Attorney General of California | Attorney General of Illinois |
| GARY E. TAVETIAN | MATTHEW J. DUNN |
| DAVID A. ZONANA | Chief, Environmental Enforcement/ |
| Supervising Deputy Attorneys General | Asbestos Litigation Division |
| ELIZABETH B. RUMSEY | |
| TIMOTHY E. SULLIVAN | */s/ Daniel I. Rottenberg* |
| Deputy Attorneys General | DANIEL I. ROTTENBERG |
| | Assistant Attorney General |
| */s/ Julia K. Forgie* | Environmental Bureau |
| JULIA K. FORGIE | Office of the Attorney General |
| Deputy Attorney General | 69 W. Washington St., 18th Floor |
| 300 S. Spring St., Suite 1702 | Chicago, Illinois 60602 |
| Los Angeles, CA 90013 | (312) 814-3816 |
| Telephone: (213) 269-6623 | DRottenberg@atg.state.il.us |
| Email: Julia.Forgie@doj.ca.gov | |
| | *Attorneys for Petitioner State of Illinois* |
| *Attorneys for Petitioner State of California, by and through Attorney General Xavier Becerra and the California Air Resources Board* | |

| | |
|---|---|
| FOR THE STATE OF MARYLAND | FOR THE STATE OF NEW JERSEY |
| BRIAN E. FROSH<br>Attorney General of Maryland | GURBIR S. GREWAL<br>Attorney General of New Jersey |
| */s/ Joshua M. Segal*<br>JOSHUA M. SEGAL<br>Special Assistant Attorney General<br>200 St. Paul Place<br>Baltimore, Maryland 21202<br>(410) 576-6446<br>jsegal@oag.state.md.us | */s/ Aaron A. Love*<br>AARON A. LOVE<br>Deputy Attorney General<br>R.J. Hughes Justice Complex<br>25 Market St.<br>Trenton, NJ 08625-0093<br>(609) 376-2762<br>aaron.love@law.njoag.gov |
| *Attorneys for Petitioner State of Maryland* | *Attorneys for Petitioner State of New Jersey* |
| FOR THE STATE OF NEW MEXICO | FOR THE STATE OF OREGON |
| HECTOR BALDERAS<br>Attorney General of New Mexico | ELLEN F. ROSENBLUM<br>Attorney General of Oregon |
| */s/ Bill Grantham*<br>BILL GRANTHAM<br>Assistant Attorney General<br>201 Third Street NW, Suite 300<br>Albuquerque, New Mexico 87102<br>(505) 717-3520<br>wgrantham@nmag.gov | */s/ Paul Garrahan*<br>PAUL GARRAHAN<br>Attorney-in-Charge<br>STEVE NOVICK<br>Special Assistant Attorney General<br>Natural Resources Section<br>Oregon Department of Justice<br>1162 Court Street, N.E.<br>Salem, Oregon 97301-4096<br>(503) 947-4342<br>paul.garrahan@doj.state.or.us<br>steve.novick@doj.state.or.us |
| *Attorneys for Petitioner State of New Mexico* | *Attorneys for Petitioner State of Oregon* |

FOR THE COMMONWEALTH OF PENNSYLVANIA

JOSH SHAPIRO
Attorney General of Pennsylvania
ANN R. JOHNSTON
Senior Deputy Attorney General

*/s/ Michael J. Fischer*
MICHAEL J. FISCHER
Chief Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
(215) 560-2171
mfischer@attorneygeneral.gov

*Attorneys for Petitioner Commonwealth of Pennsylvania*


FOR THE STATE OF VERMONT

THOMAS J. DONOVAN, JR.
Attorney General of Vermont

*/s/ Nicholas F. Persampieri*
NICHOLAS F. PERSAMPIERI
Assistant Attorney General
Office of the Vermont Attorney General
109 State Street
Montpelier, Vermont 05609
(802) 828-3186
nick.persampieri@vermont.gov

*Attorneys for Petitioner State of Vermont*

FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
Attorney General of Rhode Island

*/s/ Gregory S. Schultz*
GREGORY S. SCHULTZ
Special Assistant Attorney General
RI Office of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
gschultz@riag.ri.gov

*Attorneys for Petitioner State of Rhode Island*

# CERTIFICATE OF SERVICE

I hereby certify that pursuant to Circuit Rule 15(a), a copy of the foregoing Petition for Review was served on October 25, 2019 by certified mail, return receipt requested, on the following:

Hon. Andrew R. Wheeler
Office of the Administrator (1101A)
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Hon. William Barr
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Correspondence Control Unit
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

*/s/ Julia K. Forgie*
JULIA K. FORGIE

# Attachment 1

application of those requirements would be inconsistent with the Clean Air Act; and

• Does not provide the EPA with the discretionary authority to address, as appropriate, disproportionate human health or environmental effects, using practicable and legally permissible methods, under Executive Order 12898 (59 FR 7629, February 16, 1994).

In addition, the SIP is not approved to apply on any Indian reservation land or in any other area where the EPA or an Indian tribe has demonstrated that a tribe has jurisdiction. In those areas of Indian country, the rule does not have tribal implications and will not impose substantial direct costs on tribal governments or preempt tribal law as specified by Executive Order 13175 (65 FR 67249, November 9, 2000).

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, generally provides that before a rule may take effect, the agency promulgating the rule must submit a rule report, which includes a copy of the rule, to each House of the Congress and to the Comptroller General of the United States. The EPA will submit a report containing this action and other required information to the U.S. Senate, the U.S. House of Representatives, and the Comptroller General of the United States prior to publication of the rule in the **Federal Register**. A major rule cannot take effect until 60 days after it is published in the **Federal Register**. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by October 25, 2019. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this rule for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See CAA section 307(b)(2).)

List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Carbon monoxide, Incorporation by reference, Intergovernmental relations, Lead, Nitrogen dioxide, Ozone, Particulate matter, Reporting and recordkeeping requirements, Sulfur oxides, Volatile organic compounds.

Dated: June 24, 2019.
**Deborah Jordan,**
*Acting Regional Administrator, Region IX.*

Part 52, chapter I, title 40 of the Code of Federal Regulations is amended as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

### Subpart F—California

■ 2. Section 52.220 is amended by adding paragraphs (c)(490)(i)(A)(*2*) and (c)(522) to read as follows:

**§ 52.220  Identification of plan-in part.**

\*　\*　\*　\*　\*

(c) \* \* \*
(490) \* \* \*
(i) \* \* \*
(A) \* \* \*

(*2*) Previously approved on September 5, 2017 in paragraph (c)(490)(i)(A)(*1*) of this section and now deleted with replacement in paragraph (c)(522)(i)(A)(*1*) of this section, Rule 207 revised on April 24, 2014.

\*　\*　\*　\*　\*

(522) The following amended regulations were submitted on October 5, 2018 by the Governor's designee.

(i) *Incorporation by reference.* (A) Imperial County Air Pollution Control District.

(*1*) Rule 207, "New and Modified Stationary Source Review," except subsections C.1.c, C.2.a, C.2.b, D.1.g, and D.3.b, revised on September 11, 2018.

(*2*) [Reserved]
(B) [Reserved]
(ii) [Reserved]

[FR Doc. 2019–18135 Filed 8–23–19; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 60

**[EPA–HQ–OAR–2018–0696: FRL–9998–82–OAR]**

**RIN 2060–AU33**

### Adopting Requirements in Emission Guidelines for Municipal Solid Waste Landfills

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Final rule.

**SUMMARY:** In this action, the U.S. Environmental Protection Agency (EPA) is amending the 2016 Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills ("MSW Landfills EG"). The general requirements for state and federal plans implementing emission guidelines (EG) are referred to as implementing regulations, which are cross-referenced in the MSW Landfills EG. In a separate regulatory action titled "Revisions to Emission Guidelines Implementing Regulations," the EPA finalized changes to modernize the implementing regulations governing EG under a new subpart. This action updates the cross-references to the implementing regulations in the MSW Landfills EG to harmonize with the new requirements for state and federal plans.

**DATES:** *Effective date:* The final rule is effective on September 6, 2019.

*Compliance date:* States must submit state plans by August 29, 2019.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2018–0696. All documents in the docket are listed on the *https://www.regulations.gov/* website. Although listed, some information is not publicly available, *e.g.,* Confidential Business Information or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *https://www.regulations.gov/,* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Ave. NW, Washington, DC. The EPA's Public Reading Room hours of operation are 8:30 a.m. to 4:30 p.m. Eastern Standard Time (EST), Monday through Friday. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the EPA Docket Center is (202) 566–1742.

**FOR FURTHER INFORMATION CONTACT:** For questions about this final action, contact Allison Costa, Sector Policies and Programs Division (Mail Code E143–03), Office of Air Quality Planning and Standards, U.S. Environmental Protection Agency, Research Triangle Park, North Carolina 27711; telephone number: (919) 541–1322; fax number: (919) 541–0516; and email address: *costa.allison@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

*Preamble acronyms and abbreviations.* We use multiple acronyms and terms in this preamble. While this list may not be exhaustive, to ease the reading of this preamble and for

reference purposes, the EPA defines the following terms and acronyms here:

CAA   Clean Air Act
CRA   Congressional Review Act
EG    Emission Guidelines
EPA   Environmental Protection Agency
MSW   Municipal Solid Waste
NAICS North American Industry Classification System
NTTAA National Technology Transfer and Advancement Act of 1995
OMB   Office of Management and Budget
PRA   Paperwork Reduction Act
RIA   Regulatory Impact Analysis
RFA   Regulatory Flexibility Act
SIP   State Implementation Plan
UMRA  Unfunded Mandates Reform Act
U.S.C. United States Code

*Organization of this document.* The information in this preamble is organized as follows:

I. General Information
  A. Does this action apply to me?
  B. Where can I get a copy of this document and other related information?
  C. Judicial Review
II. Background
III. What is included in the final rule?
  A. What are the final rule amendments?
  B. What is the rationale for our final decisions and amendments?
IV. Statutory and Executive Order Reviews
  A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review
  B. Executive Order 13771: Reducing Regulation and Controlling Regulatory Costs
  C. Paperwork Reduction Act (PRA)
  D. Regulatory Flexibility Act (RFA)
  E. Unfunded Mandates Reform Act (UMRA)
  F. Executive Order 13132: Federalism
  G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments
  H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks
  I. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution or Use
  J. National Technology Transfer and Advancement Act (NTTAA)
  K. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations
  L. Congressional Review Act (CRA)

**I. General Information**

*A. Does this action apply to me?*

*Regulated entities.* Categories and entities potentially regulated by this action are shown in Table 1 of this preamble.

TABLE 1—INDUSTRIAL SOURCE CATEGORIES AFFECTED BY THIS FINAL ACTION

| Source category | Name of action | NAICS code [1] |
|---|---|---|
| State, local, and tribal government agencies. | Adopting Subpart Ba Requirements in Emission Guidelines for Municipal Solid Waste Landfills. | 924119 |

[1] North American Industry Classification System.

This table is not intended to be exhaustive, but, rather provides a guide for readers regarding entities likely to be regulated by this final action for the source category listed. This table lists the types of entities that the EPA is now aware could potentially be affected by this action. Other types of entities not listed in the table could also be regulated. To determine whether your source category is regulated by this action, you should carefully examine the applicability criteria found in the final rule. If you have questions regarding the applicability of this action to a particular entity, consult the person listed in the **FOR FURTHER INFORMATION CONTACT** section of this preamble, your delegated authority, or your EPA Regional representative listed in 40 CFR 60.4 (General Provisions).

*B. Where can I get a copy of this document and other related information?*

In addition to being available in the docket, an electronic copy of this final action is available on the internet. Following signature by the EPA Administrator, the EPA will post a copy of this final action at *https://www.epa.gov/stationary-sources-air-pollution/municipal-solid-waste-landfills-new-source-performance-standards.* Following publication in the **Federal Register**, the EPA will post the **Federal Register** version of the final document at this same website.

*C. Judicial Review*

Under section 307(b)(1) of the Clean Air Act (CAA), judicial review of this final rule is available only by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit by October 25, 2019. Moreover, under section 307(b)(2) of the CAA, the requirements established by this final rule may not be challenged separately in any civil or criminal proceedings brought by the EPA to enforce these requirements. Section 307(d)(7)(B) of the CAA further provides that ''[o]nly an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment (including any public hearing) may be raised during judicial review.'' This section also provides a mechanism for the EPA to convene a proceeding for reconsideration, ''[i]f the person raising an objection can demonstrate to the EPA that it was impracticable to raise such objection within [the period for public comment] or if the grounds for such objection arose after the period for public comment, (but within the time specified for judicial review) and if such objection is of central relevance to the outcome of the rule.'' Any person seeking to make such a demonstration to us should submit a Petition for Reconsideration to the Office of the Administrator, U.S. EPA, Room 3000, WJC South Building, 1200 Pennsylvania Ave. NW, Washington, DC 20460, with a copy to both the person(s) listed in the preceding **FOR FURTHER INFORMATION CONTACT** section, and the Associate General Counsel for the Air and Radiation Law Office, Office of General Counsel (Mail Code 2344A), U.S. EPA, 1200 Pennsylvania Ave. NW, Washington, DC 20460.

**II. Background**

On August 29, 2016, the EPA promulgated a new EG at 40 CFR part 60, subpart Cf, titled ''Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills'' (''MSW Landfills EG''), under CAA section 111(d) (81 FR 59276). The MSW Landfills EG updated the control requirements and monitoring, reporting, and recordkeeping provisions for existing municipal solid waste (MSW) landfill sources. The MSW Landfills EG incorporated by cross-reference or direct adoption of certain requirements for state and federal plans as specified in 40 CFR part 60, subpart B (the ''old implementing regulations''). Under the old implementing regulations at 40 CFR 60.23(a), as incorporated by the MSW Landfills EG, state plans were due 9 months after the MSW Landfills EG final rule was published. Because the MSW Landfills EG was published on

August 29, 2016, states were required to submit their plans to the EPA by May 30, 2017. *See* 40 CFR 60.30f(b). Under the old implementing regulations as incorporated by the MSW Landfills EG, the EPA had 4 months to approve or disapprove a state plan after receipt of a plan or plan revision, 40 CFR 60.27(b), and 6 months to issue federal plans for states that failed to submit approved plans after the due date for state plans, 40 CFR 60.27(c)–(d).

In the recent ''Revisions to Emission Guidelines Implementing Regulations,'' the EPA finalized revisions to the old implementing regulations for EG (84 FR 32520, July 8, 2019). Specifically relevant to this action, the new implementing regulations at 40 CFR part 60, subpart Ba amended the timing requirements in 40 CFR 60.23 and 60.27 for the submission of state plans, the EPA's review of state plans, and the issuance of federal plans. *See* 40 CFR 60.23a and 60.27a. In addition, the new implementing regulations include completeness criteria to be used for the review of state plans, which are modeled after the criteria that apply to state implementation plans (SIPs) submitted under CAA section 110. *See* 40 CFR 60.27a(g).

On October 30, 2018, the EPA published a proposed rule in the **Federal Register** that proposed to adopt the timing requirements of the proposed new implementing regulations in the MSW Landfills EG (83 FR 54527–32). On November 9, 2018, the EPA published a notice correcting the docket number listed for the proposed rule (83 FR 56015). On November 15, 2019, the EPA gave notice of an upcoming public hearing for the action and extended the comment period for the proposed rule until January 3, 2019 (83 FR 57387–88).

### III. What is included in the final rule?

*A. What are the final rule amendments?*

As noted in section IV of the preamble to the ''Revisions to Emission Guidelines Implementing Regulations,'' the EPA is aware of cases where state plan submittal and review processes are still ongoing for existing CAA section 111(d) EG and the EPA is applying the new timing requirements not just to EG published after the new implementing regulations are finalized, but also to ongoing EG already published under CAA section 111(d) (84 FR 32564–65 and 32575, July 8, 2019). In this action, the EPA is promulgating amendments to apply the timing requirements in the new implementing regulations to the MSW Landfills EG, an ongoing CAA section 111(d) action that was published under 40 CFR 60.22(a). Specifically, the EPA is amending the cross-reference within the MSW Landfills EG to refer to the new implementing regulations in 40 CFR 60.30f for the provisions related to the ''Adoption and submittal of State plans; public hearings'' (40 CFR 60.23a, replacing 40 CFR 60.23) and ''Actions by the Administrator'' (40 CFR 60.27a, replacing 40 CFR 60.27).

The old implementing regulations included specific requirements detailing the states' responsibilities to provide adequate notice of, hold, and document a public hearing on the state plan or plan revision. The old implementing regulations further allowed the Administrator to extend the period of submission of any plan. Additionally, the old implementing regulations allowed the Administrator 4 months after submission of a state plan to approve or disapprove the plan and required the promulgation of a federal plan within 6 months after the date required for state plan submissions that will apply to any state that has not adopted and submitted an approved plan within that time frame.

The new implementing regulations require states to submit a plan within 3 years of the publication of an EG or to submit a plan revision at any time necessary to meet the requirements of an applicable subpart. The new implementing regulations allow some flexibility to the requirements for public hearings, specifically allowing relevant materials to be made available to the public via the internet and allowing a state to cancel a public hearing if the state includes information in the notice that the hearing will be cancelled if no one requests a hearing within 30 days of the notice. Other requirements regarding the hearing remain unchanged between the old and new implementing regulations. The new implementing regulations allow the Administrator to shorten, but not to extend, the period for submission of any state plan. Additionally, the new implementing regulations require the Administrator to evaluate submitted state plans for completeness according to certain criteria within 60 days of receipt of submission, but no later than 6 months after the deadline by which states were required to submit their plans. The new implementing regulations establish that a state plan shall automatically be deemed complete if no determination has been made within 6 months of the state's submission. The Administrator will approve or disapprove state plans within 12 months of the completeness determination. Additionally, the Administrator will promulgate a federal plan within 2 years after either a state fails to submit a plan, a state submits a plan that is deemed incomplete and the deficiency is not corrected, or a state plan is disapproved.

For the MSW Landfills EG, which was published on August 29, 2016, the application of the new implementing regulations results in the following timetable for states: State plans are due to be submitted to the Administrator by August 29, 2019. The Administrator shall determine completeness within 6 months of the state submission. The Administrator will approve or disapprove plans deemed complete within 12 months of the completeness determination.

The EPA also is finalizing two clerical amendments to correctly incorporate the provisions of the new implementing regulations in the MSW Landfills EG. Within the new implementing regulations, provisions in 40 CFR 60.23a(a)(1) and 60.27a(e)(1) refer to the final guideline documents published under 40 CFR 60.22a(a). The text in 40 CFR 60.22(a) and 40 CFR 60.22a(a) refer to the implementing regulations that apply to a particular EG, depending on when the EG was published. The provisions in 40 CFR part 60, subpart Ba were published in the **Federal Register** on July 8, 2019. Therefore, EG published prior to that date are considered guideline documents published under 40 CFR 60.22(a) and EG published on or after that date are considered guideline documents published under 40 CFR 60.22a(a). Since the MSW Landfills EG was published prior to the new implementing regulations, the EPA is clarifying that these provisions (40 CFR 60.23a(a)(1) and 60.27a(e)(1)) will refer to a guideline document that was published under the old implementing regulations in 40 CFR 60.22(a).

Finally, the EPA is amending the specific deadline for the submission of state plans that is listed in 40 CFR 60.30f(b). The specific deadline is now August 29, 2019, instead of May 29, 2017. The specific date that was included in the MSW Landfills EG was based on the timing requirements of the old implementing regulations, which only allowed states 9 months to adopt and submit a state plan to the Administrator. The date is now revised to match the timing requirements of the new implementing regulations, which have replaced the old timing requirements referenced in 40 CFR 60.30f(a).

The EPA also took comment on the provisions that would apply to states that submitted state plans prior to the promulgation of these amendments. Specifically, the EPA questioned whether to amend the MSW Landfills EG regulatory text to require those states

to resubmit their plans in accordance with the provisions of the proposed new implementing regulations. Additionally, the EPA questioned, if resubmission was not required, whether the EPA should still evaluate the already-submitted plans for compliance with the new completeness criteria. The EPA is not finalizing any additional requirements for states that have already submitted plans. Therefore, state plans submitted prior to promulgation of these amendments will continue to be reviewed according to the provisions of the old implementing regulations.

On May 6, 2019, the U.S. District Court for the Northern District of California issued a decision in the case, *State of California* v. *EPA,* No. 4:18–cv–03237 (N.D. Cal. 2019). In that case, a coalition of eight states and an intervenor, Environmental Defense Fund (EDF), claimed that the EPA had failed to perform nondiscretionary duties to approve or disapprove existing state plans and to issue a federal plan in accordance with the EPA's old implementing regulations at 40 CFR part 60, subpart B, which were cross-referenced in the MSW Landfills EG. The Court ordered the EPA to take action on existing state plans by September 6, 2019, and to promulgate a federal plan by November 6, 2019.[1] As noted in section II of this preamble, the EPA recently finalized new implementing regulations that amend the timing requirements for the submission of state plans, the EPA's review of state plans, and the issuance of federal plans. This final rule, together with the new implementing regulations, change certain deadlines applicable to the MSW Landfills EG, including the deadline for a federal plan. The EPA acknowledges that, with respect to the deadline for a federal plan, there is now a conflict between the EPA's regulations and the Court's order. If the EPA determines that it should no longer have to comply with the deadline for a federal plan in the Court's order due to the promulgation of this final rule, the EPA will seek appropriate relief from the Court. State plans submitted prior to promulgation of this final rule, however, will continue to be reviewed in accordance with the provisions of the old implementing regulations and finalized in accordance with the Court's order. States that have not yet submitted a state plan have until August 29, 2019, to do so.

*B. What is the rationale for our final decisions and amendments?*

After considering public comments and further analyzing the available data, the EPA did not make any major substantive changes to the final rule relative to what we proposed. A complete list of public comments received on the proposed rule and the corresponding responses can be viewed in the document, ''Responses to Public Comments on EPA's Adopting Subpart Ba Requirements in Emission Guidelines for Municipal Solid Waste Landfills: Proposed Rule'' (hereafter ''Response to Comments document''), which is available in the docket for this action. This section of the preamble summarizes the minor changes made since the proposal, key comments with our responses, and the rationale for our final approach.

1. Application of and Rationale for Timing Requirements in New Implementing Regulations to the MSW Landfills EG

The EPA proposed to amend 40 CFR 60.30f(a) to refer to 40 CFR 60.23a and 40 CFR 60.27a in lieu of 40 CFR 60.23 and 40 CFR 60.27, respectively, and to change the corresponding date for submission of state plans in 40 CFR 60.30f(b). We are finalizing the amendments as proposed, except we are removing the proposed amendment that stated that the requirements of 40 CFR 60.27a(e)(2) would continue to refer to 40 CFR 60.24(f) instead of 60.24a(f). The amendment is no longer necessary, as the reference to 40 CR 60.24a(f) was a typographical error in the proposed implementing regulations. The final amendments promulgated for 40 CFR 60.27a(e)(2) in the new implementing regulations now refer to 40 CFR 60.24a(e) (instead of 40 CFR 60.24a(f) as proposed) for the factors that states may consider when adopting less stringent emission standards or compliance times than the EG. These factors are substantively similar to those listed in 40 CFR 60.24(f). Therefore, there is no longer a need to clarify this requirement in the MSW Landfills EG.

*Comment:* Two commenters supported the EPA's proposal to amend the MSW Landfills EG to align the timing requirements for submitting and acting on CAA section 111(d) plans with the proposed timing requirements in 40 CFR part 60, subpart Ba on the basis that the existing timing requirements were insufficient. The commenters stated that 9 months is not a realistic time frame for states to develop and submit a plan under CAA section 111(d) because the plans have to include rules to make the state standards adopted pursuant to the CAA section 111(d) guidelines enforceable. The commenters noted that regardless of the substantive content of any particular state plan, such rulemaking commonly takes a year, not including technical work and outreach to stakeholders beforehand. One commenter described many steps that are part of a state rulemaking process, including initial public outreach, drafting a proposed plan, taking public comment on that proposal, evaluating and responding to comments, seeking final approval of other state governmental entities, and codification into the state administrative code. The commenter believed that the current 9-month deadline can constrain the process and either diminish opportunities for public involvement or limit the ability of state governmental officials to fully evaluate the policies underlying the plan. The commenters further explained that the deadlines in the current implementing regulations were adopted in 1975 and do not reflect the increased complexity and procedural demands of emission standard development and rulemaking under current state and federal law. One of the commenters noted that the current deadline for EPA approval of state plans is too short and further explained that the EPA frequently takes longer than 1 year to approve SIPs under CAA section 110. The commenter claimed that inconsistencies between state rules, approved state plans, and the EPA's regulations can cause significant confusion, citing *United States* v. *Cinergy,* 623 F.3d 455, 457–59 (7th Cir. 2010). The commenter pointed out that the EPA's approval or disapproval of state plans requires multiple steps, including developing and publishing a proposal to approve or disapprove the plan, evaluating and responding to comments received from the public, and then issuing a final decision, all of which require involvement of various levels within the U.S. government (*e.g.,* approval of the U.S. Office of Management and Budget (OMB)). The commenter contended that the deadlines in the new implementing regulations will ensure sufficient time for the rulemaking process and increase the amount of time allowed for states and the EPA to work together to resolve any differences of opinion they may have on the plan submitted. The commenter further asserted that such coordination could avoid the need to disapprove a plan, and, thus, avoid the need to devote resources toward a

---

[1] One of the existing state plans, submitted by Maricopa County, Arizona, was withdrawn after the Court's original order on May 6, 2019. The Court issued a subsequent order on July 19, 2019, to exclude the Maricopa County plan from the original order.

federal plan or a revised state plan. Therefore, the commenters concluded that the EPA's proposed deadlines are much more reasonable and realistic.

Another commenter generally supported the proposed new implementing regulations for any future EG issued under CAA section 111(d). However, the commenter believed that it is only appropriate to apply the new implementing regulations prospectively to new CAA section 111(d) EG, not retroactively to the MSW Landfills EG. The commenter requested that the EPA consider finalizing revisions to incorporate the new implementing regulations in the MSW Landfills EG during the ongoing reconsideration of the MSW Landfills EG.

Meanwhile, two commenters found the EPA's proposal to be unreasonable and inadequately supported. One commenter emphasized that the proposed amendments add several years to a state plan development and approval process that should already be well underway. The commenter claimed that the proposal is arbitrary and capricious because neither the justifications in the proposal or the proposal for the new implementing regulations were adequate. The second commenter contended that the proposal should already have been implemented. The commenter stated that the EPA can give states more time to complete plans for a particular EG, as in the Clean Power Plan (80 FR 64855, October 23, 2015), or extend the deadline on an individual basis for a state that presents a factual record to demonstrate its need for more time to submit its state plan according to 40 CFR 60.27(a).

*Response:* Given the EPA's experience working with states to develop SIPs under CAA section 110, we agree with the commenters that adopting the timing requirements in the new implementing regulations for the MSW Landfills EG is a reasonable way to provide realistic deadlines for the process of submitting, reviewing, and approving state plans, and promulgating a federal plan. As stated in the preamble to the proposed rule, states have considerable flexibility in implementing CAA section 111(d) and the development of state plans requires a significant amount of work, effort, and time. Adoption of these amendments allows states more time to interact and work with the EPA in the development of state plans and minimize the chance of unexpected issues arising that could slow down eventual approval of state plans. Congressional intent, strengthened by the reference to CAA section 110, is clear that implementation of CAA section 111(d) is intended to be primarily a state-driven process, and the existence of federal backstop authority is not a sufficient reason to decline to provide a sufficient period of time for states to develop and submit their plans (83 FR 54530, October 30, 2018).

The EPA reiterates the justification provided in the proposal for this action and emphasizes the number of states who failed to meet the original deadline supports the need to adopt more reasonable timing requirements. As stated in the preceding paragraph, the EPA's prior experience on reviewing and acting on SIPs under CAA section 110 illustrates that it is appropriate to extend the period for the EPA's review and approval or disapproval of plans to a 12-month period (after a determination of completeness, either affirmatively by the EPA or by operation of law). This timeline would provide adequate time for the EPA to review plans and follow notice-and-comment rulemaking procedures to ensure an opportunity for public comment on the EPA's proposed action on a state plan (83 FR 54530, October 30, 2018). Given that most states did not meet the prescribed 9-month period to submit a state plan by May 30, 2017, the EPA determined that it would be more efficient to adopt the new implementing regulations rather than grant extensions to individual states according to the provisions of 40 CFR 60.27(a), as one commenter suggested.

Finally, as stated in the preamble to the proposed rule, the EPA determined that it is appropriate to extend the timing for the EPA to promulgate a federal plan for states that fail to submit an approvable state plan, consistent with the federal implementation plan deadline under CAA section 110(c). Whenever the EPA promulgates a federal plan, it must follow the rulemaking requirements in CAA section 307(d). This involves a number of potentially time-consuming steps, including coordination with many offices, developing a comprehensive record, and considering comments submitted on a proposed plan. In addition, when states fail to submit a plan as required under the MSW Landfills EG, we typically promulgate a single federal plan that applies to a number of states. Unlike a federal plan developed for a single state, the federal plan developed here may be more complex and time-intensive since it must be tailored to meet the needs of many states (83 FR 54530–31, October 30, 2018).

*Comment:* Five commenters objected to the EPA's justification that states need more time to submit their plans. The commenter noted that the extended deadlines that some stakeholders requested when the EPA promulgated the MSW Landfills EG (at least 12 to 24 months) have passed and that the EPA's time period is 36 months—longer than commenters requested. One commenter also alleged that the EPA actively encouraged states to flout the March 30, 2017, deadline and pointed to various pieces of email correspondence from Regional offices, primarily during the pendency of the stay from May 31, 2017, through August 29, 2017. The commenter cited a desk statement that the EPA issued in October 2017, stating that the EPA did not plan to prioritize review of state plans submitted or issue a federal plan for states that failed to submit a state plan. The commenter maintained that the correspondence makes the EPA's justification regarding the small number of plans submitted ''at the very least disingenuous.''

*Response:* The EPA disagrees with the commenter's assessment and characterization of the EPA's actions. The correspondence the commenter cites shows that there appeared to be some confusion about the impact of the EPA's statement on May 5, 2017, regarding the grant of reconsideration and a promise to stay the MSW Landfills EG. In particular, it appears that some states and Regional offices did not recognize that the date the stay was ultimately issued (May 31, 2017) did not change the fact that the deadline of May 30, 2017 (one day prior to the start of the stay period), remained valid to submit state plans. Contrary to the commenter's assertions, the desk statement made it clear that state plans were due May 30, 2017. *See* Commenter's Appx. at 418 (''Under the emissions guidelines, CAA section 111(d) state plans for addressing existing landfills were due May 30, 2017''), which is available in the docket for this action (Docket ID Item No. EPA–HQ–OAR–2018–0696–0029, Attachment 4). The desk statement also made it clear that, consistent with the expiration of the stay on August 29, 2017, ''the 2016 rules are currently in effect.'' *Id.* The EPA's explanations in the desk statement regarding its priorities and reassurance about potential sanctions for failure to submit state plans does not change the clear message that the plans were due on May 30, 2017. Even if some states were confused from correspondence before or during the stay regarding their compliance obligations, the desk statement put them on notice that the May 30, 2017, due date remained valid. The commenter cites no correspondence from a state

maintaining they were not submitting their state plan due to the October 2017 desk statement. Indeed, three states and two counties submitted their plans after the desk statement was issued— Maricopa County, Arizona, on May 4, 2018 (which was subsequently withdrawn); Pinal County, Arizona, on March 4, 2019; the remainder of Arizona on July 24, 2018; Delaware on October 13, 2017; and West Virginia on September 19, 2018. California, New Mexico, and Albuquerque–Bernalillo County, New Mexico, submitted their plans on or before the May 30, 2017, deadline. The commenter provides no evidence, only speculation, that other states failed to submit a plan due to the October 2017 desk statement. Although some commenters requested at least 12 to 24 months when commenting on the original guidelines, the fact that the majority of states did not submit a state plan within that time frame supports the EPA's contention that states need more time to submit their state plans. As the EPA explains in the prior response, and as supported by other commenters, the 36-month period is a reasonable period of time for states to submit their plans.

*Comment:* One commenter stated that this action is invalid under *Air Alliance Houston* v. *EPA,* 906 F.3d 1049, 1065 (D.C. Cir. 2018), and similar cases because the rule is an attempt to stay the MSW Landfills EG while the EPA reconsiders the guidelines, contrary to the Court's holding in *Air Alliance* and similar cases.

*Response:* The EPA disagrees with the commenter that *Air Alliance* and similar cases cited are applicable to this action. All the cases the commenter cited involve the EPA invoking its stay authority under CAA section 307(d)(7)(B) or extending the effective date of a rule pending reconsideration. That is not the case with the current action. In this final rule, the EPA is not invoking its stay authority or extending the effective date of a rule pending reconsideration.

As the Court in *Air Alliance* noted, the EPA ''retains authority . . . to substantively amend the programmatic requirements of [a rule], and pursuant to that authority, revise its effective and compliance dates, subject to arbitrary and capricious review.'' *Air Alliance Houston* v. *EPA,* at 1066. The EPA is doing precisely what the Court in *Air Alliance* said is the proper course of action. The EPA is substantively amending the programmatic requirements of the MSW Landfills EG and, pursuant to its authority to amend those requirements, is revising the compliance dates of the rule. As explained elsewhere in the Response to Comments document, available in the docket for this rulemaking, the EPA's revisions to the compliance deadlines meet the arbitrary and capricious standard of review because the revised compliance deadlines are consistent with CAA requirements, are supported by the record, and are rationally explained. Additionally, see the Response to Comments document for more detailed discussion of the specific cases cited.

*What is the rationale for our final approach?* For the reasons explained in the preamble to the proposed rule (83 FR 54530–54531, October 30, 2018) and in the comment responses in this section of this preamble, we are finalizing the requirements in 40 CFR 60.30f(a) and (b) to refer to the timing and completeness requirements in 40 CFR 60.23a and 60.27a.

2. Addition of New Completeness Criteria for Evaluation of State Plans; Resubmittal of Already-Submitted State Plans

The EPA is finalizing, as proposed, the requirement for state plans to be evaluated according to the criteria in 40 CFR 60.27a(g). The EPA did not receive any comments in favor of requiring states to resubmit their plans or in favor of evaluating the already-submitted plans for compliance with the new completeness criteria.

*Comment:* Two commenters opposed applying completeness criteria to previously submitted state plans. One commenter contended that the Arizona Department of Environmental Quality's submittal already meets the proposed new completeness criteria and believed it could remedy any inconsistencies between its currently submitted plan and the new proposed completeness requirements through a supplemental submittal. The other commenter pointed out that the EPA should have already completed its review of these state plans. Thus, the commenter contended that applying completeness criteria to previously submitted plans would result in unlawful retroactive application of new, more burdensome criteria. The commenter stated all plans should be held to the same regulatory standard, regardless of when they were submitted.

*Response:* The EPA has reviewed the comments and determined that it is not necessary to require states who have already submitted state plans prior to the promulgation of these amendments to resubmit those plans to demonstrate compliance with the new completeness criteria in 40 CFR 60.27a(g). The EPA is in the process of reviewing the state plans that have already been submitted prior to the promulgation of these amendments and will evaluate these plans in accordance with the old implementing regulations (40 CFR 60.27(b)). Therefore, it is not necessary to consider whether a supplemental proposal is needed from states that have already submitted state plans. Similarly, because the EPA is not changing any requirements for these states, there is no need for the states to review the submitted plans or the completeness criteria and there will be no additional burden for these states.

Regarding the commenter's statement that all plans should be reviewed according to the same criteria, the EPA maintains, as stated in the preamble to the proposed rule, that the new completeness criteria for states are based on the criteria outlined in the old implementing regulations and in 40 CFR part 51, appendix V, that states already follow when developing SIPs under CAA section 110. The criteria in 40 CFR part 51, appendix V apply to the majority of state plans submitted to the EPA, and, therefore, many states likely already comply with these completeness criteria when developing their CAA section 111(d) state plans. Thus, the EPA has determined that state plans submitted prior to the promulgation of this rule are not subject to substantively different review criteria than plans submitted after promulgation of this rule.

*What is the rationale for our final approach?* In response to comments as described within this section of this preamble, we are not making any changes to the requirements that we proposed. The EPA is not requiring that state plans that were already submitted prior to the promulgation of these amendments be evaluated according to the completeness criteria in the new implementing regulations and, therefore, we are not requiring resubmission of those state plans.

3. Impacts of This Action

In the preamble to the proposed rule (83 FR 54531, October 30, 2018), we explained that although the costs and benefits of harmonizing the timing requirements of state plans cannot be quantified due to inherent uncertainties, the EPA believes that they will be minimal. This includes impacts of the costs for landfills to install gas collection systems, the amount of landfill gas captured over the life of the project, and the costs for states to comply with the new timing and completeness criteria. The EPA requested comments on this determination.

*Comment:* Commenters disagreed in their views of the EPA's assessment of

the environmental impacts, with some commenters agreeing that impacts would be minimal, and others contending that the rule would have significant impacts on human health and welfare.

One commenter disputed any claims that the EPA's proposal to extend the process for implementing the MSW Landfills EG would have a detrimental impact on the environment. To the contrary, the commenter believed that the proposal to adopt new deadlines into the MSW Landfills EG will not have any real impact on emissions or the environment. The commenter pointed out that the revisions to the EG that the EPA adopted in 2016 would further reduce emissions by only 3 percent, which may be overstated. The commenter claimed that landfills are already well controlled, and that the EPA's 2016 analysis showed impacts for 2025, which is still 6 years away. The commenter claimed that extending the deadlines merely reflects the current reality of the rule—most states have not yet submitted state plans and maintaining the current deadlines would not change that fact.

Two commenters claimed the action is unlawful because the EPA has a statutory responsibility to reduce air emissions from pollutants that endanger human health and the environment. One of the commenters disagreed that the proposal represents a procedural change and claims it is a substantial revision of the MSW Landfills EG, which will result in significant additional emissions of dangerous air pollution with adverse effects on human health and welfare. The commenter said that the EPA has not explained how this proposal will not forego those benefits. This commenter asserted that the EPA does not provide justification for the statement that impacts are minimal. The commenter also claimed the EPA does not acknowledge its prior analyses of the public health, environmental, or energy impacts, which the commenter says are required statutory considerations when establishing EG under CAA section 111. Another commenter explained that the EPA did not provide information about surveying affected facilities to see which ones may or may not have already installed controls, so the conclusions in the preamble are insufficient.

One commenter asserted that the rule would have significant adverse impacts on human health and welfare. The commenter cited the preamble to the MSW Landfills EG (81 FR 59276, August 29, 2016) and noted that the EPA estimated that the EG would reduce 1,810 megagrams per year of nonmethane organic compound emissions and 285,000 metric tons of methane per year (over 7.1 million metric tons of carbon dioxide equivalent) plus displace fossil fuel-generated electricity. In that preamble, the EPA estimated that, by 2025, the annual net benefits of the EG would be $390 million. Therefore, the commenter claimed that by delaying implementation, the EPA is forfeiting reductions of tens of millions of metric tons of greenhouse gas emissions and at least $1.5 billion in net benefits.

Multiple commenters believe that delaying implementation of the EG would have a net cost. Two of these commenters claim that the EPA failed to conduct a Regulatory Impact Analysis (RIA) or analyze the foregone benefits and argues that the costs are substantial, not minimal. One commenter claims that human health and welfare is at stake due to climate change, so the action cannot be reasonable regardless of economic impact. One commenter, thus, cited the EPA's ''Regulatory Impact Analysis for the Final Revisions to the Emission Guidelines for Existing Sources and the Final New Source Performance Standards in the Municipal Solid Waste Landfills Sector,'' EPA–452/R–16–003 (2016 RIA) (Docket ID Item No. EPA–HQ–OAR–2003–0215–0235) to demonstrate that delaying implementation of the EG has a net cost. The commenter claimed that according to the 2016 RIA, 92 landfills would reduce 330,000 metric tons of methane in 2019 due to the EG. The commenter asserted that is an average of an additional 3,580 tons of methane emitted from each landfill in 2019. The commenter also asserted that the social cost of methane for 2019 emissions is approximately $1,200 in 2007 dollars ($1,490 in 2018 dollars), which would mean that each landfill that postponed installation has over $5 million in forgone climate benefits/monetized climate damages, plus unmonetized impacts to health and environment. Because the social costs are not zero, the commenter stated the EPA can and should assess how many landfills could postpone installation of controls before the delay is not cost-benefit justified.

A second commenter estimated that, using the values from the MSW Landfills EG preamble (81 FR 59280, August 29, 2016), this action would lead to forfeiture of $397 million in annual net benefits from 2019 through 2025. Another commenter stated that the proposed amendment would result in adverse climate impacts totaling $400 million to $4.8 billion, based on the 2016 RIA, saying that methane emission reduction benefits of the proposed rule are approximately $200 million to $1.2 billion per year and assuming that this rule will delay these reductions by 2 to 4 years.

Another commenter cited the 2016 RIA to state that methane emissions would be reduced by 330,000 metric tons per year and nonmethane organic compounds by 281 metric tons per year. The commenter included data from the 2016 RIA Tables 3–13, 3–14, and 6–7 to show the number of affected landfills, annual emission reductions, and annual net benefits of the EG over each year from 2019 to 2030. To calculate the foregone emission reductions and net benefits from the current proposal, the commenter assumed that states and the EPA would take the maximum amount of time allowed by the new deadlines. Then the commenter added 36 months (instead of 30 months) for the initial monitoring and installation lead time allowed in the rules, which resulted in approximately 11,000 tons nonmethane organic compounds emissions, 1.75 million tons methane emissions, and over $2 billion cumulatively, depending on how many states prepare individual plans. The commenter estimated that, even if the EPA promulgated a federal plan in July 2019, the proposal would still result in foregone benefits of 3,000 to 5,000 tons nonmethane organic compounds emissions; 500,000 to 800,000 tons methane emissions, and net benefits of nearly $1 billion.

*Response:* The EPA disagrees that this final action will result in significant foregone economic and climate benefits. As one commenter cited, many MSW landfills are already well controlled, due in part to some MSW landfills that install landfill gas collection systems prior to the dates required by the MSW Landfills EG to capitalize on incentives (*e.g.,* revenue from recovered energy) or in order to comply with state rules that have more stringent regulatory requirements. For example, a web search of two major carbon offset registries, the American Carbon Registry and Climate Action Reserve, returned over 100 U.S. landfill gas capture/combustion projects that have registered credits. To be eligible to produce offset credits, the landfill gas capture/combustion projects cannot be required due to regulation. Therefore, these lists are one example of the prevalence of voluntary installation of landfill gas collection systems.[2] A copy of the results obtained from a search on June 13, 2019, is available in the docket for this action. In comparison, the MSW

---

[2] *See* https://americancarbonregistry.org/how-it-works/registry-reports and https://www.climateactionreserve.org/how/projects/.

Landfills EG estimated that 93 landfills would need to install controls due to the change in emissions threshold (81 FR 59305, August 29, 2016).

Multiple commenters cited the 2016 RIA. However, the commenters failed to provide any new information or refute the EPA's assessment that some landfills would install controls earlier than required by federal regulations. Similarly, all except one of these commenters assumed the ''worst-case'' scenario, *i.e.,* that states would wait to submit their state plans until the deadline (or not at all) and that each subsequent step (completeness review, approval, and promulgation of a federal plan for states without approved state plans) would take the maximum amount of time allowed under the new implementing regulations. Additionally, these commenters failed to analyze or acknowledge the effects of the states who have already submitted state plans (California; Delaware; West Virginia; Pinal County, Arizona; the rest of Arizona; Albuquerque-Bernalillo County, New Mexico; and the rest of New Mexico) or who may be developing state plans. For an approvable state plan, these states should already have adopted laws incorporating the requirements of the MSW Landfills EG. As the delegated authority, the state should have revised MSW landfill permits in these states to include the new requirements. Therefore, the emission reductions and associated benefits attributed to the MSW Landfills EG in the 2016 RIA are already occurring in these locations and are not affected by this action.

The EPA emphasizes that this action does not change the stringency of the emission reduction requirements promulgated in the MSW Landfills EG. As noted in the preamble to the proposed rule adopting the 40 CFR part 60, subpart Ba requirements in the MSW Landfills EG, the costs and benefits of harmonizing the timing requirements of state plans cannot be quantified due to inherent uncertainties regarding when affected landfills actually install controls to reduce emissions (84 FR 54531, October 30, 2018). These uncertainties can arise at the state level, based on the timing of the promulgation of state regulations (as discussed above), or at the facility level, as individual landfills evaluate site-specific factors to determine the timing of emissions controls. For example, some facilities may have an incentive to install landfill gas collection systems, such as to recover and use landfill gas as an energy source to offset existing energy costs or to provide a source of revenue prior to regulatory requirement dates. This offers financial advantages for some facilities to install landfill gas collection systems early in the development of the project (*i.e.,* prior to the regulatory requirement date resulting from a state or federal plan implementing the MSW Landfills EG). Additionally, landfill gas collection systems are a common method of reducing odors from landfills. Therefore, other facilities install landfill gas collection systems prior to regulatory requirement dates to reduce odors either voluntarily, as mandated by state odor requirements, or as part of a consent decree/court order. If facilities have already installed controls, then shifting the date by which states must submit plans would not have any impact on the actual collection and control of landfill gas from those facilities. On the other hand, some sources may choose to wait until requirements are enacted prior to installing controls. While this would not impact the cost of installing controls, it could impact the amount of landfill gas captured over the life of the project and increase the net cost (83 FR 54531, October 30, 2018).

In terms of direct costs, as noted in the preamble to the MSW Landfills EG, EG established under CAA section 111(d) do not impose any requirements on regulated entities directly; rather, the EG require states and U.S. territories to establish comparable standards for existing sources. It is those state requirements that impact regulated entities. However, the EG do impose costs on state or local governments, as these governments must establish plans to implement the EG according to the criteria in the implementing regulations (84 FR 59309–10, October 30, 2018). The requirements for states to develop state plans remain substantively the same between the old implementing regulations and the new implementing regulations. While there could be a small increase in burden for administrative hours to ensure the plan specifically meets the new completeness criteria, we expect that burden to be offset by updated provisions that increase flexibility for states, such as the ability to provide information related to public hearings on the internet or the ability to cancel the public hearings in certain situations. Overall, we expect the amendments to provide consistency and streamline procedures for states as they develop plans to meet CAA section 110 and 111 regulations.

*What is the rationale for our final approach?* For the reasons explained in the preamble to the proposed rule (83 FR 54531, October 30, 2018) and within this section of this preamble, the EPA maintains that the adoption of the new implementing regulations is a procedural change whose impacts cannot be characterized due to inherent uncertainties and are likely to be minimal. Therefore, we have not made any substantive changes to the description of this regulation or the characterization of the impacts within the Statutory and Executive Order Reviews section of this preamble (section IV).

## IV. Statutory and Executive Order Reviews

Additional information about these statutes and Executive Orders can be found at *https://www.epa.gov/laws-regulations/laws-and-executive-orders.*

### A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review

This action is a significant action that was submitted to OMB for review. Any changes made in response to OMB recommendations have been documented in the docket.

### B. Executive Order 13771: Reducing Regulations and Controlling Regulatory Costs

This action is considered an Executive Order 13771 deregulatory action. As noted earlier in the preamble, this rule is an administrative action to update the underlying implementing regulations for CAA Section 111(d), as applied to the MSW Landfills EG. While the impact of harmonizing the timing requirements of state plans on the costs and benefits analyzed for Executive Order 12866 of the MSW Landfills EG cannot be quantified due to inherent uncertainties described in section III.B of this preamble, the MSW Landfills EG also impose direct costs on state and local governments, which must develop state plans to meet the requirements of the rule. By adopting the new implementing regulations in the MSW Landfills EG, states will have a consistent set of requirements for all new and ongoing CAA section 110 and 111 plans. We expect the streamlining of these requirements could reduce net costs and provide some burden reduction for states.

### C. Paperwork Reduction Act (PRA)

This action does not impose any new information collection burden under the PRA. OMB has previously approved the information collection activities contained in the existing regulations and has assigned OMB control number 2060–0720. Because the burden to prepare and submit a state plan have been fully incorporated into the MSW

Landfills EG, and this action does not change any of the requirements associated with the stringency of the rule, there are no changes to the previously estimated information collection burden.

*D. Regulatory Flexibility Act (RFA)*

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. In making this determination, the impact of concern is any significant adverse economic impact on small entities. An agency may certify that a rule will not have a significant economic impact on a substantial number of small entities if the rule relieves regulatory burden, has no net burden, or otherwise has a positive economic effect on the small entities subject to the rule. This action proposes a technical amendment to the MSW Landfills EG promulgated in 2016, which was determined not to impose any requirements on small entities due to the fact that EG established under CAA section 111(d) do not impose any requirements on regulated entities and, thus, will not have a significant economic impact upon a substantial number of small entities. *See* 81 FR 59309–9310 (August 29, 2016) for additional discussion. We have, therefore, concluded that this action similarly will have no net regulatory burden for all directly regulated small entities.

*E. Unfunded Mandates Reform Act (UMRA)*

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments.

The action implements mandate(s) specifically and explicitly set forth in 40 CFR part 60, subpart Ba without the exercise of any policy discretion by the EPA.

*F. Executive Order 13132: Federalism*

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

*G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This action does not have tribal implications, as specified in Executive Order 13175. The MSW Landfills EG recognized that one tribe had three landfills that may potentially be subject to the EG; however, these landfills have already met requirements under the previous new source performance standards/EG framework as promulgated in 1996 (*See* 81 FR 59311, August 29, 2016). Moreover, this action does not establish an environmental health or safety standard. Therefore, the action does not have a substantial direct effect on that tribe since it is merely a procedural change amending timing requirements for states to submit plans to the EPA and for the EPA to promulgate a federal plan. Thus, Executive Order 13175 does not apply to this action.

*H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks*

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of ''covered regulatory action'' in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it is a procedural change and does not concern an environmental health risk or safety risk.

*I. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use*

This action is not a ''significant energy action'' because it is not likely to have a significant adverse effect on the supply, distribution, or use of energy. Further, we have concluded that this action is not likely to have any adverse energy effects because it is a procedural change and does not have any impact on energy supply, distribution, or use.

*J. National Technology Transfer and Advancement Act (NTTAA)*

This rulemaking does not involve technical standards.

*K. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations*

The EPA believes that this action is not subject to Executive Order 12898 (59 FR 7629, February 16, 1994) because it does not establish an environmental health or safety standard. This regulatory action is a procedural change and the EPA does not anticipate that it will have any material impact on human health or the environment.

*L. Congressional Review Act (CRA)*

This action is subject to the CRA, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

**List of Subjects in 40 CFR Part 60**

Environmental protection, Administrative practice and procedures, Emission guidelines, Landfills, Reporting and recordkeeping requirements, State plan.

Dated: August 16, 2019.

**Andrew R. Wheeler,**
*Administrator.*

For the reasons set forth in the preamble, the EPA amends 40 CFR part 60 as follows:

**PART 60—STANDARDS OF PERFORMANCE FOR NEW STATIONARY SOURCES**

■ 1. The authority citation for part 60 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

**Subpart Cf—Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills**

■ 2. Amend § 60.30f by revising paragraphs (a) and (b) to read as follows:

**§ 60.30f  Scope and delegated authorities.**

\*  \*  \*  \*  \*

(a) If you are the Administrator of an air quality program in a state or United States protectorate with one or more existing MSW landfills that commenced construction, modification, or reconstruction on or before July 17, 2014, you must submit a state plan to the U.S. Environmental Protection Agency (EPA) that implements the Emission Guidelines contained in this subpart. The requirements for state and federal plans are specified in subpart B of this part with the exception that §§ 60.23 and 60.27 will not apply. Notwithstanding the provisions of § 60.20a(a) in subpart Ba of this part, the requirements of §§ 60.23a and 60.27a will apply for state plans submitted after September 6, 2019, and federal plans, except that the requirements of § 60.23a(a)(1) will apply to a notice of availability of a final guideline document that was published under § 60.22(a). Likewise, the requirements of § 60.27a(e)(1) will refer to a final guideline document that was published under § 60.22(a).

(b) You must submit a state plan to the EPA by August 29, 2019.

\*   \*   \*   \*   \*

[FR Doc. 2019–18233 Filed 8–23–19; 8:45 am]

**BILLING CODE 6560–50–P**